DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHERRIE YVETTE JOHNSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-3741

[March 6, 2019]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; James W. McCann, Judge; L.T. Case No. 562016CF001515 A.

Clyde M. Taylor III of Taylor & Taylor, PA, St. Augustine, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Alexandra A. Folley, Assistant Attorney General, West Palm Beach, for appellee.

DAMOORGIAN, J.

Appellant, Cherrie Johnson, appeals her judgment and sentence for one count of exploitation of an elderly person for a value of $10,000 or more but less than $50,000. Appellant claims the trial court erred in denying her motion for judgment of acquittal based on the State's failure to prove the elements of intent and value. We agree with Appellant that the State failed to prove the valuation element, but otherwise affirm on the intent element. We therefore reverse and remand Appellant's conviction and sentence and instruct the court to readjudicate and resentence Appellant for the offense of exploitation of an elderly person in the amount of less than $10,000.

**Facts**

This case stems from actions Appellant took after her eighty-eight year old neighbor (the "victim") was involuntarily hospitalized pursuant to Florida's Baker Act after exhibiting signs of dementia. There is no dispute that Appellant had the victim sign a power of attorney ("POA") while the victim was hospitalized and then used that POA to withdraw more than

$13,000 from the victim's bank accounts. What was in dispute is what Appellant did and intended to do with the money. Appellant maintains that she simply tried to help the victim and used the money to pay the victim's bills and fix up her house. The State, however, concluded that Appellant obtained the POA knowing that the victim did not understand what she was signing and then used the victim's bank account for purposes not in the victim's best interests. Therefore, the State charged Appellant with exploitation of an elderly person for a value of $10,000 or more but less than $50,000, as well as grand theft. The matter proceeded to a jury trial where the State presented the following evidence.

The victim was involuntarily hospitalized after she was found confused and living in deplorable conditions. Appellant began visiting the victim a few days into her hospitalization and told hospital staff that she was the victim's neighbor and had been looking after her. Appellant also stated that she wanted to get the victim back home and presented the hospital with an undated designation of health care surrogate purportedly signed by the victim. Due to the neglected condition the victim was found in, hospital staff became suspicious of Appellant and rejected the undated designation as it could not verify the victim's signature. As such, the victim remained in the hospital.

Thereafter, Appellant returned to the hospital with a notary and a friend to serve as a witness and had the victim sign forms naming Appellant as her health care proxy and POA. Appellant then recorded the POA in the public records and, with the POA, added herself as a signatory on some of the victim's bank accounts. Around this same time, an anonymous person called police to report a suspected burglary in progress at the victim's house. The responding officer encountered Appellant, her minor daughter, and another woman bringing cleaning supplies into the victim's home. Appellant told law enforcement that they were trying to clean up in preparation for the victim's release from the hospital.

After learning about the victim's execution of the POA and health care proxy, the hospital contacted law enforcement and initiated guardianship proceedings concerning the victim. Law enforcement obtained the victim's bank records and determined that, as the victim's POA, Appellant withdrew a total of $13,549.16 from the victim's accounts. Of those funds, $2,590.02 was deposited into Appellant's personal account. The remaining funds were paid to various persons in the form of bank checks and/or used for retail purchases. Law enforcement also learned that Appellant added her daughter (who was six years old at the time) as the death beneficiary of the victim's accounts. The branch manager who added Appellant's daughter testified that Appellant explained that she took

2

this action to protect the funds in the event a probate case was filed.

Eventually, a guardian was appointed on behalf of the victim and Appellant and her daughter were removed as signatories on the victim's accounts. The guardian placed the victim in a nursing home where she died a short time later.

In her defense, Appellant presented evidence supporting her argument that she had no intent to exploit the victim as all of her actions were to the benefit of the victim. This evidence included testimony from individuals who helped Appellant clean the victim's home and were paid with bank checks as well as photographs documenting the cleanup process. Appellant also submitted invoices and receipts accounting for most of the money she withdrew from the victim's bank accounts. These records established that Appellant used about $8,000 to pay for labor and supplies associated with cleaning the victim's home, property taxes on the victim's home, and an attorney to represent the victim in the guardianship proceedings. Appellant testified that the money transferred into her own account was to compensate herself for the time spent working on the home and/or to reimburse herself for expenses incurred on the victim's behalf. She also admitted to adding her daughter as a beneficiary of the victim's accounts, but explained that she did so based on advice from the bank's manager regarding the protection of the victim's assets.

Considering the foregoing evidence, the jury found Appellant guilty of both theft in an amount of $10,000 or more and exploitation of the elderly in the same amount. After the State elected to proceed only on the exploitation count, Appellant filed a timely post-verdict motion for judgment of acquittal wherein she argued that the State failed to prove either that she had the intent to or actually did deprive the victim of the use or benefit of $10,000 or more because all of the funds Appellant removed from the victim's accounts were used for the victim's benefit. The court denied Appellant's motion and this appeal follows.

### Analysis

Appellant was convicted of exploitation of an elderly person under section 825.103(1)(b) of the Florida Statutes. That section defines the charged crime as:

> Obtaining or using, endeavoring to obtain or use, or conspiring with another to obtain or use an elderly person's or disabled adult's funds, assets, or property with the intent to temporarily or permanently deprive the elderly person or

3

disabled adult of the use, benefit, or possession of the funds, assets, or property, or to benefit someone other than the elderly person or disabled adult, by a person who knows or reasonably should know that the elderly person or disabled adult lacks the capacity to consent[.]

§ 825.103(1)(b), Fla. Stat. (2016).

The statute further provides that if the funds, assets, or property involved in the exploitation is valued at $10,000 or more but less than $50,000, the offender commits a felony of the second degree. If the funds, assets, or property is valued at less than $10,000, the offender commits a felony of the third degree. § 825.103(3), Fla. Stat.

Based on the foregoing, in order to sustain Appellant's conviction under section 825.103(1)(b), the State was required to prove that: 1) Appellant obtained the victim's funds or assets; 2) with the intent of depriving the victim of the use or benefit of those funds or assets; and 3) while knowing that the victim lacked the capacity to consent. It was also required to prove the value of those assets.

"Generally, an appellate court will not reverse a conviction which is supported by competent, substantial evidence. If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002) (internal citations omitted). "A more stringent standard of review applies, however, if the state's evidence of guilt is wholly circumstantial." *Galavis v. State*, 28 So. 3d 176, 178 (Fla. 4th DCA 2010). In circumstantial cases, "a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." *Id.* (quoting *State v. Law*, 559 So. 2d 187, 188 (Fla. 1989)). "[I]f there is direct evidence of a defendant's *actus reus*, but the defendant's intent is proven solely through circumstantial evidence, the special standard of review applies only to the state's evidence establishing the element of intent." *Id.*

Appellant argues that the court erred in denying her motion for judgment of acquittal because the State's evidence regarding the element of intent was purely circumstantial and did not refute Appellant's reasonable hypothesis of innocence—that Appellant used the victim's funds solely for the victim's benefit. Alternatively, Appellant argues that even if the State sufficiently proved intent, it did not prove that she actually exploited the victim for $10,000 or more since the unrefuted evidence

established that the majority of the money removed from the victim's accounts was used for her benefit. For the reasons set forth below, we hold that the State presented sufficient evidence to send the issue of intent to the jury. However, we agree that the evidence was insufficient to prove that Appellant exploited the victim in an amount of $10,000 or more.

*Intent*

There are two key cases issued by this Court which are instructive to the issue of intent in an exploitation of the elderly case. The first is *Everett v. State*, 831 So. 2d 738 (Fla. 4th DCA 2002). There, a defendant who was convicted of exploitation of the elderly in the amount of $20,000 or more appealed the trial court's denial of her motion for judgment of acquittal. *Id.* at 739. The evidence at trial established the defendant took the purported victim to the bank and helped the victim close out one of her accounts. *Id.* at 739–40. After law enforcement became involved, the defendant stated that most of the money from the closed account was used to repair the victim's home and provided receipts for about half of the funds. *Id.* at 740. The defendant claimed that she returned the remainder of the money to the victim. *Id.* at 741. The State did not present any evidence establishing where the remainder of the money went. *Id.*

On appeal, this Court reversed the defendant's conviction, holding that the State failed to prove the intent element of the charged crime. Specifically, we reasoned:

> [T]here simply was no evidence from which the jury could reasonably conclude that [the defendant] exploited the victim either by obtaining, or trying to obtain, the victim's funds with the intent of temporarily or permanently depriving the victim of them. Here, there were no deposits into the defendant's bank accounts, no unexplained sudden acquisition of property in the defendant's name. In the end, [the defendant] stated that any money which was not accounted for by a receipt, or her own recollection, was given to [the victim]. The State presented no evidence inconsistent with this claim.

*Id.* at 742.

The second key case is *McNarrin v. State*, 876 So. 2d 1253 (Fla. 4th DCA 2004). There, a defendant was convicted of exploitation of the elderly where the evidence established that the defendant, a caregiver for a ninety-two year old woman, cashed a $6,000 check made out to "cash" from the woman's account. *Id.* at 1254. The defendant claimed that she cashed

5

the check at the request of the woman and used the money to open an account at the assisted living facility where the woman resided. *Id.* Since the State did not introduce any evidence at trial establishing that the defendant retained the money or that the money was not used to open an assisted living facility account, this Court reversed the defendant's conviction, holding that the State failed to "present sufficient evidence to establish the necessary intent." *Id.* at 1254–55.

*Everett* and *McNarrin* establish that when a defendant charged with exploitation of the elderly alleges that funds taken from the alleged victim were used for the victim's benefit, the State must submit evidence to the contrary. Such contrary evidence could include unexplained deposits in the defendant's bank accounts or acquisitions of property. *See Everett*, 831 So. 2d at 742. In the instant case, although there was evidence corroborating Appellant's claim that much of the money taken from the victim's accounts was used for the benefit of the victim, there was also evidence establishing that Appellant deposited some of the money taken from the victim's accounts into her own bank account and named her daughter as the beneficiary of the victim's accounts. This evidence, when viewed in the light most favorable to the State, supports the alternative theory that Appellant intended to benefit herself and not preserve the victim's estate. *See Durousseau v. State*, 55 So. 3d 543, 557 (Fla. 2010) ("Under the circumstantial evidence standard, when there is an inconsistency between the defendant's theory of innocence and the evidence, when viewed in a light most favorable to the State, the question is one for the finder of fact to resolve and the motion for judgment of acquittal must be denied."). Accordingly, we affirm the trial court's denial of Appellant's motion for judgment of acquittal on the issue of intent.

*Value*

As outlined above, the degree of an exploitation of the elderly conviction depends on the value of the "funds, assets, or property involved in the exploitation" and, therefore, value constitutes an element of the crime that the State must prove beyond a reasonable doubt. § 825.103(3), Fla. Stat. (2016); *cf. Wiechert v. State*, 170 So. 3d 109, 111 (Fla. 2d DCA 2015) ("The degree of a theft conviction generally depends on proof of the value of the items stolen, and hence the value of the stolen goods constitutes an element of the crime that the State must prove beyond a reasonable doubt.").

The evidence established a total of $13,549.16 was removed by Appellant from the victim's bank accounts. From that amount, it is undisputed that almost $8,000 was used to pay the victim's real estate

taxes, clean up her home, and retain legal counsel to represent the victim in the guardianship proceeding. Subtracting this amount expended for the benefit of the victim from the total removed from the victim's accounts puts the maximum value of the funds taken and not used for the victim's benefit well under $10,000. Accordingly, the State did not prove the value element of the charged crime. We therefore reverse and remand Appellant's conviction and sentence with instructions that the court re-adjudicate and resentence Appellant for the offense of exploitation of an elderly person in the amount of less than $10,000. § 825.103(3), Fla. Stat.

*Affirmed in part, reversed in part, and remanded.*

WARNER and LEVINE, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

7